John CALENE, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff).

No. 90–264.

Supreme Court of Wyoming.

Feb. 5, 1993.

Leonard D. Munker, State Public Defender, Gerald M. Gallivan, Director, Wyoming Defender Aid Program, and Darold S. Melchior, Wyoming Defender Aid Program, Student Intern, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia L. Hackl, Deputy Atty. Gen., Jennifer L. Gimbel, Sr. Asst. Atty. Gen., Theodore E. Lauer, Director, Prosecution Assistance Program, P. Jaye Rippley and Beverly J. Montoya, Prosecution Assistance Program, Student Interns, for appellee.

Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT * and GOLDEN, JJ.

URBIGKIT, Justice.

This appeal tests the procedures utilized under Wyoming law when ineffectiveness of trial counsel is alleged by the convicted defendant.

This opinion will address the procedures available for appellant to factually develop any contention claiming ineffectiveness of his legal representation which was not documented within the original trial record. We reverse the decision of the trial court which denied a hearing on the motion for a new trial. This case is remanded for the trial court to hold a factual hearing on the validity of the allegations made by John Calene of ineffective representation following his conviction of four conspiracy and larceny offenses.

## I.  FACTS

John Calene (Calene) was arrested and tried for the felonies of receiving stolen property, possessing a vehicle with an altered identification, accessory before the fact of felony larceny and conspiracy to commit larceny. He was convicted of all four charges and received sentences of two-to-four years on all four counts, with counts one and two to run concurrently with each other and counts three and four to run concurrently with each other, but the sentences for counts one and two were ordered to run consecutively with the sentences for counts three and four. Consequently, Calene received a total sentence of two consecutive two-to-four year terms.

The object of these charges was a Datsun 280Z which had been stolen in Lakewood, Colorado by other parties and delivered to Gillette, Wyoming, where it was repainted by Calene. The vehicle had been impounded in Gillette by the police and was then stolen from the police impound lot and returned to Colorado where it was again recovered as a stolen vehicle. The entire episode was initiated in Gillette by an anon-

ymous call to the police. Identification of the anonymous caller was later established by the police, but the informant was not called to testify at Calene's trial.

Following his conviction, Calene wrote a letter to the trial judge describing claims of ineffective conduct of his appointed counsel. In this July 30, 1990 letter, he asked for a new trial. The letter was followed by a September 4, 1990 request by Calene's counsel to withdraw. Withdrawal was granted by court order and a successor counsel was appointed.

Second counsel refiled the motion for a new trial, alleging the same general grounds of ineffectiveness of the original trial attorney. That motion for a new trial was combined with the sentencing hearing and heard on September 13, 1990. The motion was summarily denied and the sentence was orally entered followed by a written order on September 30, 1990 denying the motion for new trial and entering the sentence.

At the September 13, 1990 new trial/sentencing hearing, the trial court stated:

THE COURT: Mr. Calene, the very first thing, we have to deal with is there is a motion filed for a new, new trial.

I received the letter that you sent me, and the court—or the letter, of course, is at best accusatory and simply conclusory in nature, and the court believes that even if the things that you claim in that letter are true, that they are properly handled on appeal.

For that reason, the court does not grant but rather denies your motion for a new trial. And if you wish to appeal, you may take those issues up on appeal.

The letter to the trial judge stated:

I'm writing to you in hope of having a mistrial declared on the grounds of improper representation by my court-appointed attorney, * * *.

There are several matters I feel weren't handled properly before and during my trial.

The first happened as I was to have my preliminary hearing in county court.

* Chief Justice at time of oral argument; retired January 1, 1993.

[Defense counsel] wanted me to postpone the hearing so that he could have time to prepare for it. I was afraid of losing my right to a speedy trial so I asked for him to come visit me at the Detention Center before my hearing. Instead of coming to see me he sent [another attorney] to tell me the only choice I had was to postpone because he was to[o] busy with a jury trial. The jury trial he was in wasn't even assigned to him. He was just a spectator. I ended up postponing my hearing to give him time to prepare.

As the hearing approached I contacted him to see how things were going to only hear that he hadn't been able to look over my files. He ended up having me waive my preliminary hearing because he hadn't had time to prepare a defense.

During this delay he hired two investigators to do research on my case: * * *. I gave them both a list of several witnesses that would be needed in order to prove my innocence.

During my release from jail on bond I checked in with [defense counsel] about once a week to only hear that the investigators hadn't been able to contact my witnesses. I gave them all the information required to get in touch with them. I believe that the only people interviewed were the State's witnesses against me. Both of whom told conflicting stories to the investigators.

Then the day of my pretrial was set and he was sick that day and I was told I wasn't required to be there.

Further attempts to contact him regarding my case were futile because the next week he was on vacation. I was informed by his office to meet with him the following Sunday, an appointment that was not kept by [defense counsel]. The following week he was required to attend a trial advocacy school and another Sunday appointment was scheduled. He called me on that Sunday the day before my trial and asked me a few simple questions and told me he didn't need to see me.

The next day at my trial I felt there were several issues that need[ed] attention.

The first being lack of witnesses called on my behalf. My cousin * * * who wouldn't appear voluntarily because of being on his honeymoon should have been subpeoned [sic]. He could have verified the fact that I was hired by Mike & Brett to paint a car and that I had no knowledge of the fact that they had stolen the car until my trip to Denver with Mr. McMasters. Kirby Lyons should have been subpeoned [sic] to prove falacy [sic] with Shawn McMaster's testimony about talking with him the day the car was confinscated [sic] and to tell the court that I left town because I was afraid of what was going to happen with Mike & Brett wanting to steal the car back. Also I feel that he should have subpeoned [sic] Mr. Allard of the Gillette Tire Store to testify to the fact that I had never recieved [sic] a title from him or even inquired about one. Also my wife Patsy Martinez should have been subpeoned [sic] because she knew that I was just hired to paint the car. Also I feel he should have entered the tape of Shawn McMasters['] interview with Mr. Hanson to prove that he will say almost anything required to keep himself out of a jam.

[Defense counsel] should never have stated that his client; (myself) was stupid in addressing the jury in his closing argument.

One other thing I thought to be wrong in my trial I felt that in your instructions to the jury you should have made it more clear that each charge was seperate [sic] from the other. And that they should be treated as such.

In light of the facts that I have brought to your attention I hope that you will grant me a new trial on the grounds that stand: Improper counsel on the part of the public defender; [defense counsel]. Thank you for taking this matter into consideration because I truly don't want to go to prison for crimes that I didn't commit.

The motion for a new trial by the second counsel stated as a basis, denial "of a fair trial due to ineffective assistance of coun-

sel" and attached as an exhibit the letter which had been filed in July.

## II. ISSUE

The structure of this case is presented with an appellate record which furnishes this court no basis for analysis of the validity or invalidity of the claims of ineffectiveness of counsel. Furthermore, the record demonstrates that the trial court did not exercise discretion, based on any factual finding, in rendering the decision to deny the new trial motion. Our determination will establish how the facts will be developed for appellate review since ineffectiveness of counsel, by our precedent, requires these issues to be presented during the initial appeal or otherwise be procedurally defaulted. The more defined issue involves procedures for those cases where evidence beyond the trial record is required to make a proper and informed judicial decision regarding the constitutionally-required competent assistance of legal counsel.

We reverse the order denying the motion for a new trial and remand for the trial court to hold an evidentiary hearing.

## III. DISCUSSION

■ To make a decision for this case, this court will examine the processes available under the particular structure of Wyoming's ineffectiveness of counsel law in order to provide the system for factual development by the trial court in its initial decision. That record and decision will then be available for review on appeal or subsequent proceedings in the federal court system, if pursued, by constitutional inquiry to that jurisdiction. It is recognized that Wyoming law, on this subject, differs generally from most jurisdictions.[1] This court applies a procedural default, waiver of constitutional right, perspective to ineffectiveness of trial counsel claims in all cases if not presented by the initial appeal. *Engberg v. Meyer*, 820 P.2d 70 (Wyo.1991); *Murray v. State*, 776 P.2d 206 (Wyo.1989); *Kallas v. State*, 776 P.2d 198 (Wyo.1989); *Amin v. State*, 774 P.2d 597 (Wyo.1989); *Campbell v. State*, 772 P.2d 543 (Wyo.1989); *Schuler v. State*, 771 P.2d 1217 (Wyo.1989); *Cutbirth v. State*, 751 P.2d 1257 (Wyo.1988). This poses the evidentiary problem which we now must resolve in order to avoid adjudication from ignorance where some ineffectiveness claims cannot be resolved without supplementation of evidence which was not developed by inclusion in the initial trial record. Normally, such additional evidence would include testimony of the trial lawyer, the accused, and a requirement for the convicted defendant to demonstrate a viable factual basis which would support his claim regarding the claimed adverse quality of representation he was provided. This answer comes within either a post-sentence motion for a new trial based on ineffectiveness of counsel or within a remand hearing provided following institution of appeal.[2]

1. The normal rule for review of claims of intrinsic ineffectiveness of counsel is placed within post-conviction relief processes, including habeas corpus, petition for post-conviction relief or a motion for a new trial, to be pursued by a hearing if a bona fide evidentiary conflict is, or may be, created. In the federal system, the accepted method is the habeas corpus petition, 28 U.S.C. § 2244, *unless* the trial record provides clear and dispositive detail for decision. The case law is truly exhaustive, but recent cases would include: *United States v. Johnson*, 954 F.2d 1015 (5th Cir.1992); *United States v. McGill*, 952 F.2d 16 (1st Cir.1991); *United States v. Bounds*, 943 F.2d 541 (5th Cir.1991); *United States v. Tatum*, 943 F.2d 370 (4th Cir.1991); *United States v. Murdock*, 928 F.2d 293 (8th Cir.1991); *United States v. Schmidt*, 922 F.2d 1365 (8th Cir.1991); *United States v. Percy*, 765 F.2d 1199 (4th Cir.1985); *United States v. Birges*, 723 F.2d 666 (9th Cir.), *cert. denied* 466 U.S. 943, 104 S.Ct. 1926, 80 L.Ed.2d 472, *cert. denied* 469 U.S. 863, 105 S.Ct. 200, 83 L.Ed.2d 131 (1984); *Harley v. State*, 594 So.2d 352 (Fla.App.1992); *Smith v. State*, 260 Ga. 274, 393 S.E.2d 229 (1990); *Com. v. Licata*, 412 Mass. 654, 591 N.E.2d 672 (1992); *Com. v. DeGeorge*, 506 Pa. 445, 485 A.2d 1089 (1984); *Com. ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967); *Horton v. State*, 411 S.E.2d 223 (S.C. 1991); and *State v. Wickline*, 184 W.Va. 12, 399 S.E.2d 42 (1990). *See also Murray v. State*, 776 P.2d 206 (Wyo.1989); *Kallas v. State*, 776 P.2d 198 (Wyo.1989); and *Amin v. State*, 774 P.2d 597 (Wyo.1989).

2. The California judicial processes provide a hybrid system permitting factual analysis by a motion for a new trial or a post-conviction habeas corpus proceeding which is normally considered on appeal with other appellate is-

■ The practical problem for reliance on usage of the motion for a new trial, initially, is the short time permitted after trial to make such a motion and the likelihood that appellate counsel has not yet become involved. It is recognized that trial counsel should neither be asked nor expected to contend ineffectiveness of performance by himself or herself within the trial or plea bargaining activities. *People v. Hayes,* 229 Ill.App.3d 55, 170 Ill.Dec. 850, 593 N.E.2d 739 (1992). Consequently, the new trial forum in the usual case, differing from events occurring here with a very early change in counsel, could realistically be used only generally for ineffectiveness cases involving extrinsic circumstances and not intrinsic performance questions. This is so because the extrinsic circumstance case is occasioned by events uncontrolled by trial counsel. The intrinsic cases involve determinative decisions of counsel, planned or unplanned as it may have been. The basis for counsel action or inaction will frequently not be documented in the trial record.

A different result may develop as here, however, where the defendant may move pro se based upon the contention that appointed counsel has failed to prepare; as, for example, investigate an alibi witness on his behalf. *People v. Krankel,* 102 Ill.2d 181, 80 Ill.Dec. 62, 464 N.E.2d 1045 (1984). Where the trial court refused to rule on a pro se motion for a new trial based on trial court ineffectiveness of counsel performance, see *People v. Jackson,* 158 Ill. App.3d 394, 110 Ill.Dec. 746, 511 N.E.2d 923 (1987). *See also Hayes,* 170 Ill.Dec. 850, 593 N.E.2d 739, where there was a trial counsel misunderstanding of the controlling principle of insanity defense law. In addition, the trial court had a mistaken belief that a new trial could not be granted, "based on ineffective assistance of counsel if there is substantial prejudice." *Id.* at 857, 593 N.E.2d at 746.

The *Hayes* court recognized, regarding the motion for a new trial:

Next, defendant correctly asserts that the trial court mistakenly believed that ineffective assistance of counsel was not a permissible basis for granting a motion for a new trial. A new trial can be granted based on ineffective assistance of counsel if there is substantial prejudice.

*Id.*

Consequently, when a bona fide issue of performance does, in its infrequency of occurrence, realistically exist regarding preparation and trial time performance, opportunity is needed for appellate counsel to document the facts involved for judicial decision. Since the time for filing a motion for a new trial will usually have passed, the process remaining is for appellate counsel to file a motion of partial remand for a factual hearing. This process leaves the only opportunity for state exhaustion of factual review. Although in absence of a request, our procedural default decisions would apply under state law. Within federal rules applicable to this subject, in the absence of the right of the defendant to obtain a hearing, preclusive procedural default cannot exist under the federal constitution.

This case is illustrative since the only documentation available, beyond trial evidence, is the letter of complaint by appellant addressed to the trial court. The preliminary hearing had been waived and no transcript of any pretrial conference session is available. Without some factual development regarding defense counsel's trial preparation, pretrial investigation, witness interview and evidentiary presentation, this court is called to adjudicate from abject ignorance—which we decline to do.

Synthesizing the original statements now presented in briefing, contentions of ineffectiveness of counsel are threefold. They include: (a) lack of preparation for the preliminary hearing resulting in required waiver; (b) failure to be available to confer, to interview witnesses, or to investigate in

sues. *People v. Babbitt,* 45 Cal.3d 660, 248 Cal. Rptr. 69, 755 P.2d 253 (1988), *cert. denied* 488 U.S. 1034, 109 S.Ct. 849, 102 L.Ed.2d 981 (1989); *People v. Ledesma,* 43 Cal.3d 171, 233 Cal.Rptr.

404, 729 P.2d 839 (1987); *People v. Fosselman,* 33 Cal.3d 572, 189 Cal.Rptr. 855, 659 P.2d 1144 (1983).

preparation for trial; and (c) failure to sub-poena witnesses to be available for trial testimony.[3]

The circumstantial evidence introduced at trial against Calene was substantial. Furthermore, this is not a sufficiency of the evidence appellate review. To defend against the web of unfavorable implications resulting from trial established historical events, Calene claimed he did not know the vehicle was originally stolen, did not have anything to do with the changed VIN plate, and did not involve himself in the removal of the car from the police impound lot. It was to be his "I didn't do any of it" defense.

These contentions and available evidence were summarized in Calene's appellate brief:

> Appellant maintained that he had no knowledge that the car he agreed to paint was stolen, at least not until after the car was painted and impounded by the police. There existed ample evidence that would support Appellant's "lack of knowledge" defense, evidence that counsel knew about but which he did not investigate or make an effort to have reasonably investigated. Appellant provided counsel with a list of witnesses who could verify his "lack of knowledge" defense. Appellant provided counsel with the names of Mr. Dan Hartwig, Mr. Kirby Lyons, Mr. Allard, and Ms. Patsy Martinez. Mr. Hartwig, the person who knew and initially introduced Appellant to the two men who "owned" the car in question, could have verified that Appellant was hired by the two men to paint the car, and that Appellant had no knowledge that the car to be painted was stolen. Mr. Hartwig could have further provided names, both first and last, of the two men who stole the car and arranged to have it painted by Appellant. Mr. Kirby Lyons could have testified that Appellant did not talk with Shawn McMaster, State's key witness, the day the car was confiscated as McMaster testified at trial, and that Appellant left town because he was fearful of what was going to happen relative to the two men and their plan to steal the impounded car from the police impound lot. Mr. Allard, owner of Gillette Tire Store, could have testified that Appellant did not procure a title to the car in question from Gillette Tire Store, contrary to McMaster's testimony at trial. Patsy Martinez could have testified that Appellant was hired by two men from Denver to paint their car, and that Appellant had no knowledge that the car was stolen.

Second, there are several incidents that occurred during the course of counsel's association with Appellant that strongly suggest that counsel's decision not to call or subpoena certain witnesses was largely, if not solely, the result of counsel's inadequate preparation and investigation, and not strategic decision making. First,

---

**3.** One of the more comprehensive classifications of these many cases is provided in a frequently cited law journal review. Jon R. Waltz, *Inadequacy of Trial Defense Representation as a Ground for Post–Conviction Relief In Criminal Cases,* 59 Nw.U.L.Rev. 289 (1964). Wyoming has seen some, if not most, of these contentions in prior case review. Two general classes predominate in instances where a reversal or at least a comprehensive factual hearing is required. In essence, they may be essentially the same situation, but described differently. The first group is within the category of pretrial preparation, failure to interview or call witnesses: *King v. State,* 810 P.2d 119 (Wyo.1991); *Laing v. State,* 746 P.2d 1247 (Wyo.1987); *Gist v. State,* 737 P.2d 336 (Wyo.1987), *appeal after remand* 766 P.2d 1149 (Wyo.1988); *Frias v. State,* 722 P.2d 135 (Wyo.1986); *Kenley v. Armontrout,* 937 F.2d 1298 (8th Cir.), *cert. denied* — U.S. —, 112 S.Ct. 431, 116 L.Ed.2d 450 (1991) (Missouri case); *United States v. Gray,* 878 F.2d 702 (3rd Cir.1989); *Code v. Montgomery,* 799 F.2d 1481 (11th Cir.1986); *United States v. Decoster,* 624 F.2d 196 (D.C.Cir. 1976), *cert. denied* 444 U.S. 944, 100 S.Ct. 302, 62 L.Ed.2d 311 (1979); *Wickline,* 399 S.E.2d 42.

The second category is distilled into the unfavorable description of "gave up" representation: *Capps v. Sullivan,* 921 F.2d 260 (10th Cir.1990); *Cochran v. State,* 262 Ga. 106, 414 S.E.2d 211 (1992); *People v. Droz,* 39 N.Y.2d 457, 384 N.Y.S.2d 404, 348 N.E.2d 880 (1976); *Culton v. State,* 818 S.W.2d 839 (Tex.App.1991); *Wickline,* 399 S.E.2d 42.

The *Anders* brief cases provide a similarly identified attitude of counsel: *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). *See Engberg v. State,* 686 P.2d 541 (Wyo.), *cert. denied* 469 U.S. 1077, 105 S.Ct. 577, 83 L.Ed.2d 516 (1984); *cf. Engberg,* 820 P.2d 70.

Appellant, after requested by counsel to postpone his preliminary hearing so as to allow counsel to prepare for same, was forced to waive his right to the preliminary hearing because counsel indicated to Appellant that he had not had time to prepare a defense. Second, investigators hired by counsel to research Appellant's case claimed that they were unable to contact witnesses whose names had been given them by Appellant, despite Appellant's giving them the necessary information to ensure contact. Further, counsel made no effort to have these witnesses subpoenaed so he could ascertain the value of their testimony relative to Appellant's overall defense strategy. Third, the weeks that followed Appellant's scheduled pretrial conference, which was not attended by counsel due to his being ill, nor by Appellant because he was instructed that it was unnecessary for him to be there, were filled with a myriad of circumstances which prevented counsel from performing his duty to present for Appellant a reasonable defense. There were broken and canceled appointments, counsel's vacation, council's [sic] mandatory attendance at trial advocacy school, and other damaging impasses that prevented counsel from effectively representing Appellant. Counsel finally made contact by phone with Appellant the day before his trial, and asked Appellant a few brief questions. It was not until the next day at trial that Appellant realized the magnitude of counsel's unpreparedness, for there were only two witnesses available to testify on behalf of Appellant, neither of whom could have provided eye-witness testimony supporting Appellant's defense theory.

There is no evidence of any kind provided for this court to make a factual assessment of these contentions, nor was any factual assessment actually made by the trial court. Actually, first counsel withdrew without defense of the quality of his representation. Second counsel provided perfunctory participation which did not even include the preparation of an affidavit to support the statements included in the initial letter. All of this is probably explainable because the trial judge demonstrated no interest in providing time for a factual hearing.[4]

We address the right of the individual defendant to secure a factual hearing in the state court system on contentions of ineffectiveness of counsel regarding events undocumented in the trial record. In providing a definite and available system for factual development where needed, it is recognized that in absence, procedural default cannot occur from the standpoint of federal constitutional standards. To retain the principal decision making in the state court system, Wyoming judicial procedures should provide for factual inquiry when ineffectiveness of counsel issues are created which are not determinable from the initial trial record. Within the particular structure of Wyoming law, competent appellate counsel is required to present ineffectiveness contentions within the initial appeal to avoid state procedural default. However, without a state system, there cannot be procedural default of this issue from the standpoint of the application of the United States Constitution in federal court proceedings. The construction of an adequate state judicial decision for resolution of ineffectiveness of counsel contentions combines three goals. First is the opportunity for adequate fact finding and consequent sustainable decisions by the trial court. Second is a developed record for appellate review by this court. Finally, there will have been provided a state court decision which will be accorded justified deference in any subsequent federal court review. Consequently, we combine the procedural default delineations of *Murray*, 776 P.2d 206; *Kallas*, 776 P.2d 198; *Amin*, 774 P.2d 597; and *Cutbirth*, 751 P.2d 1257, with a *Strickland v. Washington*, 466 U.S.

---

**4.** The record, including demands for witness statements and documentation, realistically portrays, at best, a moderately energized defense. If other witnesses were available for defense, they certainly were needed since supporting testimony to make the defense credible was critical.

668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) standard for constitutional review.

Any fact finding analysis for system construction is divided into ineffectiveness of counsel allegations for which the initial appellate record is dispositive, e.g., *Bearpaw v. State*, 803 P.2d 70 (Wyo.1990)—providing a complete record, or, conversely, further fact finding is required after an opportunity to elicit necessary evidence is provided. The first category involves appeals where the appellate record is sufficient for factual resolution and issue disposition. That type of case is contrasted with the cases where the events at issue are not determinable from trial evidence documented in the appellate record. Consequently, the record does not supply a defined factual basis for appellate decision. The general category of cases where fact finding might arguably be required, most numerous within a broad array of types of claims, includes instances where appellant argues a misunderstanding or misadvice about his testifying at trial, counsel's failure to call witnesses, or to inadequately investigate and prepare.

In stages, then, these issues can be separated into: (a) the ineffectiveness of trial counsel contentions; which, as an allegation, are sufficiently insubstantial that fact finding by the trial court could provide no substantive or material additional information, e.g., contention of improper advice to plead guilty which is directly disproved by the specific transcript of the plea and sentencing proceedings; (b) ineffectiveness of trial counsel; which, as an allegation, can be determined from the trial record; and (c) contentions of ineffective assistance of counsel that involve facts external to the trial record which normally would involve trial counsel's conduct in advice, investigation and trial preparation. It is only to this third class that additional fact finding is required or presently directed in our analysis.

In first separation, there is a basic requirement regarding allegations of ineffectiveness of counsel in the initial trial proceeding which can foreclose any right to a hearing, whether by remand or motion for a new trial. This court has dispositively determined that it is necessary for serious and specific allegations of ineffectiveness to be sufficiently stated and documented to show a real issue before the trial court can be put to the additional requirement of providing an evidentiary hearing. *Leach v. State*, 836 P.2d 336 (Wyo.1992). The sufficient statement prerequisite of *Leach* is mandatory. To be determined next is whether the existent record is insufficient to answer factual contentions by relevant factually disputable contentions.

Assuming the initiating requirements of *Leach* have been met and some relevant factual issue really exists, the process to be available involves alternatives which might be pursued by either a requested factual hearing before the trial court through a motion for a new trial or, thereafter, in conjunction with appellate briefing for defendant to file a motion for remand for an ineffectiveness factual hearing and decision. *Smizer v. State*, 835 P.2d 334 (Wyo. 1992).

■ Within the purview of current decisions of the United States Supreme Court, findings and the decisional statement of the state trial court should be sufficiently specific to permit normal appellate review by this court and to justify deference within any 28 U.S.C. § 2244 habeas corpus review by a federal court. Having first answered the criteria of our decision, we will then address the complicated and voluminous case law to explain why. Basic rules to guide and direct the Wyoming court system "[are] both feasible and desirable." *Sanders v. United States*, 373 U.S. 1, 15, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963).

## IV. BASIC CONSTITUTIONAL LAW

In considering ineffectiveness cases, a well-defined grouping into three categories exists: (a) dual representation—conflict of counsel cases; (b) state interference cases—extrinsic factor situations; and (c) challenged competency of performance—intrinsic ineffectiveness claims.

■ We need not expand discussion to dispose of the dual representation cases. The Wyoming rule is fixed and defined for

existence of dual representation cases. W.R.Cr.P. 44(c) states that compliance is mandatory and, in absence, conflict situations require conviction reversal. *Shongutsie v. State,* 827 P.2d 361 (Wyo.1992); *Kenney v. State,* 837 P.2d 664 (Wyo.1992). *Cf. Thompkins v. Cohen,* 965 F.2d 330 (7th Cir.1992), where the issue, rather than dual representation, was defense counsel status. *See also United States v. Litchfield,* 959 F.2d 1514 (10th Cir.1992).

■ The second category, extrinsic ineffectiveness claims, *see* Jon R. Waltz, *Inadequacy of Trial Defense Representation as a Ground for Post-conviction Relief in Criminal Cases,* 59 Nw.U.L.Rev. 289, 301–41 (1964), would be more likely subject to resolution on the original trial record. In general, these cases have been categorized by one authority to include: (a) restriction upon counsel assistance; and (b) late appointment of counsel. 2 Wayne R. LaFave and Jerold H. Israel, *Criminal Procedure,* § 11.8 (1984).

This category of cases is succinctly described in the seminal effectiveness of counsel case of *Strickland,* 466 U.S. at 686, 104 S.Ct. at 2063–2064:

> Government violates the right to effective assistance when it interferes in certain ways with the ability of counsel to make independent decisions about how to conduct the defense. See, *e.g., Geders v. United States,* 425 U.S. 80 [96 S.Ct. 1330, 47 L.Ed.2d 592] (1976) (bar on attorney-client consultation during overnight recess); *Herring v. New York,* 422 U.S. 853 [95 S.Ct. 2550, 45 L.Ed.2d 593] (1975) (bar on summation at bench trial); *Brooks v. Tennessee,* 406 U.S. 605, 612–613 [92 S.Ct. 1891, 1895, 32 L.Ed.2d 358] (1972) (requirement that defendant be first defense witness); *Ferguson v. Georgia,* 365 U.S. 570, 593–596 [81 S.Ct. 756, 769–770, 5 L.Ed.2d 783] (1961) (bar on direct examination of defendant).

Other frequently cited United States Supreme Court cases addressing the extrinsic interference include the primary right to counsel in *Geders v. United States,* 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976) (restriction on overnight conference between attorney and client); *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) (restriction on cross-examination precluded defense from showing possible bias of witness); and *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932) (belated appointment, inadequate time to prepare); *cf. United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) (claimed insufficient time to prepare and inexperience of counsel not dispositive in absence of demonstration of specific errors made by trial counsel).

There is another category of these extrinsic interference cases involving the state invasion of lawyer/client relationships. *See* 2 LaFave and Israel, *supra,* § 11.8 at 73 in citation of *United States v. Morrison,* 449 U.S. 361, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981); *Weatherford v. Bursey,* 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977); and *Hoffa v. United States,* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966). *See also Haworth v. State,* 840 P.2d 912 (Wyo.1992), Urbigkit, J., dissenting, and cases therein considered.

The contentions of ineffectiveness presented for review in this appeal involve the third category of contended ineffective performance of legal counsel based upon the attorney's intrinsic ineffectiveness.

> Here, the courts refused to adopt prophylactic standards and reject the assumption that an assessment of prejudice is too speculative to be part of the standard of judicial review. They turn instead to a fact-sensitive analysis which seeks to measure the quality and impact of counsel's representation under the circumstances of the individual case.

2 LaFave and Israel, *supra,* § 11.10 at 93.

These cases commonly include a variety of distinctive but distinguishable functions in representation; including, generally, faulty or delayed advice regarding plea negotiations or decisions, *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); failure to prepare, *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); failure to interview and obtain presence of witnesses, *King v. State,* 810 P.2d 119 (Wyo.1991);

unfamiliarity with the applicable law, *Tillery v. United States*, 419 A.2d 970 (D.C.App.1980); decisions made by counsel based on negligence rather than strategic choice, *Marzullo v. Maryland*, 561 F.2d 540 (4th Cir.1977), *cert. denied* 435 U.S. 1011, 98 S.Ct. 1885, 56 L.Ed.2d 394 (1978); failure to make highly appropriate trial objections, *Tollett v. Henderson*, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); *Com. v. Roundtree*, 469 Pa. 241, 364 A.2d 1359 (1976); and, failure to contact known witnesses, *Com. v. Richey*, 249 Pa.Super. 365, 378 A.2d 338 (1977). The significance of the partial enumeration of cases is to illustrate that, in some cases, contentions of ineffectiveness can be easily and dispositively resolved from the original trial record; while in other cases, it is most unlikely that the trial record would provide the requisite information.

The fundamental analysis we are required to undertake is to understand the structure of United States Supreme Court decision-making on the subject of federal constitutional claims involving ineffectiveness of counsel and corollary procedural default—waiver and forfeiture decisions, which determine our necessity and approach to reach a primary goal of disposition of contentions of ineffectiveness as completely as may be possible through state court proceedings where the state court prosecution was pursued. We deem it a primary responsibility of the state adjudication process to dispose of issues involving those proceedings in the state court to the extent realistically possible. In that pursuit, certain directed concepts are clear.

### A. *Right to Counsel*

The right to counsel in state court proceedings is required through the Fourteenth Amendment as a matter of effectuation of the Sixth Amendment to the United States Constitution. *Powell*, 287 U.S. 45, 53 S.Ct. 55; *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). In *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the right was dispositively assigned that an indigent defendant in a criminal trial has the right to have the assistance of counsel as a fundamental right essential to a fair trial, and defendant's trial and conviction, without the assistance of counsel, violated the Fourteenth Amendment. *See also Holloway v. Arkansas*, 435 U.S. 475, 489, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). That right was extended to counsel on initial appeal, *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); and confined to initial appeal and not a discretionary appeal, *Ross v. Moffitt*, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974), or collateral proceedings, *Pennsylvania v. Finley*, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987).

■ The right to counsel extends to effective counsel and a proper record. *Penson v. Ohio*, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988); *Evitts v. Lucey*, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985); *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *McMann*, 397 U.S. 759, 90 S.Ct. 1441; *Entsminger v. Iowa*, 386 U.S. 748, 87 S.Ct. 1402, 18 L.Ed.2d 501 (1967); and *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

■ Interference with or denial of a right to counsel in a state proceeding invokes a federal issue subject to review through federal habeas corpus, 28 U.S.C. § 2254, whether arising from direct appeal, *Penson*, 488 U.S. 75, 109 S.Ct. 346, or collateral proceedings, *Humphrey v. Cady*, 405 U.S. 504, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972).

■ The issue of effectiveness of counsel involving intrinsic ineffectiveness apprehends a mixed question of law and fact and the standard for ineffectiveness review by the federal courts is different than commonly applied in Fourth Amendment search and seizure federal certiorari collateral review cases.

Finally, in a federal habeas challenge to a state criminal judgment, a state court conclusion that counsel rendered effective assistance is not a finding of fact binding on the federal court to the extent stated by 28 U.S.C. § 2254(d). Ineffectiveness is not a question of "basic,

primary, or historical fac[t]," *Townsend v. Sain,* 372 U.S. 293, 309, n. 6 [83 S.Ct. 745, 755 n. 6, 9 L.Ed.2d 770] (1963). Rather, like the question whether multiple representation in a particular case gave rise to a conflict of interest, it is a mixed question of law and fact. See *Cuyler v. Sullivan,* 446 U.S., at 342 [100 S.Ct. at 1714]. Although state court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement of § 2254(d), and although district court findings are subject to the clearly erroneous standard of Federal Rule of Civil Procedure 52(a), both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact.

*Strickland,* 466 U.S. at 698, 104 S.Ct. at 2070. See *Kenney v. Tamayo–Reyes,* — U.S. ——, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992); *Castille v. Peoples,* 489 U.S. 346, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989); *Ex parte Hawk,* 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572 (1944); and *Poyner v. Murray,* 964 F.2d 1404, 1416 (4th Cir.1992). Exhaustion of state remedies is required.

■■■ In the event that a factual issue is presented for review which is undeveloped in any available proceeding in the state court, the factual review is then pursued in the federal court habeas corpus proceedings. 28 U.S.C. § 2254(d)(2) and (3); *Capps v. Sullivan,* 921 F.2d 260 (10th Cir. 1990); *Osborn v. Shillinger,* 861 F.2d 612 (10th Cir.1988); *Osborn v. Shillinger,* 639 F.Supp. 610 (D.Wyo.1986), *aff'd* 861 F.2d 612 (10th Cir.1988), *appeal after remand* 806 P.2d 259 (Wyo.1991); *Kennedy v. Shillinger,* 759 F.Supp. 1554 (D.Wyo.1991), *aff'd* 971 F.2d 558 (10th Cir.), *cert. denied* — U.S. ——, 113 S.Ct. 623, 121 L.Ed.2d 556 (1992). See also *Braley v. Shillinger,* 902 F.2d 20 (10th Cir.1990). *Cf. Knox v. State,* 959 F.2d 866 (10th Cir.1992) and *Wade v. Franzen,* 678 F.2d 56 (7th Cir.1982).·

■■■ If a proper state court fact finding hearing has been held, deference is given to the fact finding function of the state court regarding ineffectiveness of counsel

contentions. *Strickland,* 466 U.S. 668, 104 S.Ct. 2052. See also *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). This is the converse of the state court procedural default inhibition to federal habeas corpus relief. *Coleman v. Thompson,* — U.S. ——, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Ylst v. Nunnemaker,* — U.S. ——, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991); *Miranda v. Cooper,* 967 F.2d 392 (10th Cir.1992); *Kenley v. Armontrout,* 937 F.2d 1298 (8th Cir.), *cert. denied* — U.S. ——, 112 S.Ct. 431, 116 L.Ed.2d 450 (1991).

The test that the Wyoming Supreme Court has elected to follow is generally enunciated in *Strickland,* 466 U.S. at 686–89, 104 S.Ct. at 2063–2065:

The Court has not elaborated on the meaning of the constitutional requirement of effective assistance in [intrinsic ineffectiveness claims]—that is, those presenting claims of "actual ineffectiveness." In giving meaning to the requirement, however, we must take its purpose—to ensure a fair trial—as the guide. The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.

\*    \*    \*    \*    \*    \*

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in

the adversary process that renders the result unreliable.

\* \* \* [T]he proper standard for attorney performance is that of reasonably effective assistance. \* \* \* When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness.

More specific guidelines are not appropriate. The Sixth Amendment refers simply to "counsel," not specifying particular requirements of effective assistance. It relies instead on the legal professions' maintenance of standards sufficient to justify the law's presumption that counsel will fulfill the role in the adversary process that the Amendment envisions. \* \* \* The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.

Representation of a criminal defendant entails certain basic duties. Counsel's function is to assist the defendant, and hence counsel owes the client a duty of loyalty, a duty to avoid conflicts of interests. \* \* \* From counsel's function as assistant to the defendant derive the overreaching duty to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution. Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process. \* \* \*

These basic duties neither exhaustively define the obligations of counsel nor form a checklist for judicial evaluation of attorney performance. \* \* \*

Judicial scrutiny of counsel's performance must be highly deferential. \* \* \* A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

In addition to an examination of the standard of representation, there is a further requirement that prejudice to the defendant is required:

[A]ny deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.

*Id.* at 692, 104 S.Ct. at 2067.

When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt. \* \* \*

In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury.

*Id.* at 695, 104 S.Ct. at 2069.

In addition to the "opportunity" or challenge to the state court to provide an opportunity for a hearing, there is a procedural default constitutional right/forfeiture in the event that state court processes are not exhausted. While we consider our state court processes for this fact finding opportunity, we recognize the preclusion provided in the default rules of federal courts in the event that some appropriate opportunity existed and was unused. *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) set the stage. The United States Supreme Court established the rule in that case that an unchallenged right to a Miranda warning, before an inculpatory statement was made, was waived for any federal habeas attack by the defendant's failure to request a *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) hearing in state court, or otherwise raise an evidentiary challenge for the issue before resort to the

federal court proceedings. Application of the *Wainwright* rule has been expanded to other constitutional deprivation contentions otherwise available for review in the federal habeas proceedings which, to a yet not clearly determined degree, would include ineffectiveness of counsel failures to initially present the issue within available state court proceedings. *Ylst,* —— U.S. at ——, 111 S.Ct. at 2593.

The rigorous application made for the waiver forfeiture was redefined and reemphasized by the current case of *Keeney,* —— U.S. ——, 112 S.Ct. 1715, 118 L.Ed.2d 318; *see also Sawyer v. Whitley,* —— U.S. ——, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992) and *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), procedural default, waiver, forfeiture for non-compliance with contemporaneous objection rule. Further application of the *Wainwright* rule is found in *Smith v. Murray,* 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986). Furthermore, inadvertence of counsel is not a cause required to escape the *Wainwright* waiver forfeiture rule involving procedural default. *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

With the preclusive effect of waiver forfeiture not now in question and the probability that a reliable fact finding decision by the state court will be given imposing deference, we will answer our challenge to settle state court issues in the state court system. We establish regular processes to provide an adequate hearing where a factual inquiry is realistically required to resolve the constitutional contention of deprivation of effective assistance of counsel. Fundamental fairness can more adequately and accurately be determined best and first in state court proceedings. *See* 2 LaFave and Israel, *supra,* § 11.10 at 45 (Supp.1991).

How then do we accommodate these variant interests in the clearly defined procedural direction for trial court and counsel in Wyoming practice?

■ First, if an ineffectiveness contention is recognized within the trial record, inclusion of the issue should occur in first appeal by statement of the issues and appropriate briefing detail. An opportunity seldom provided could also be utilized if identification comes early enough to move for a new trial on the basis of ineffectiveness of counsel with a requirement that the evidentiary hearing be held on the motion. *Leach,* 836 P.2d 336. If a hearing is held, the record will be settled by the findings of the trial court and that decision will be considered by this court by application of the normal appellate review rule of substantial sustaining evidence. *True Oil Co. v. Sinclair Oil Co.,* 771 P.2d 781 (Wyo. 1989). The decision for ineffectiveness review presents a mixed question of fact and law for both the trial court, initially, and this court on appellate review. *Strickland,* 466 U.S. 668, 104 S.Ct. 2052.

If these contentions of ineffectiveness are first developed by appellate counsel during record examination and appellate briefing preparation, a motion for remand should be made and appropriately supported by contentions defining and supporting any ineffectiveness claim in detail and supported, as may be appropriate, by affidavit sufficient to establish substantially. *Cf. Leach,* 836 P.2d 336, where no adequate support was provided to justify an evidentiary remand hearing.

Following a hearing, the trial court will provide a specific decision addressing separate contentions by examination and resolution of the validity of any trial court ineffectiveness of counsel contentions. Appellate briefing can then include ineffectiveness of counsel hearing transcripts and decision conjunctively with any appeal discussion considering other issues presented as claimed error in the initial trial.

## V. APPLICATION TO THIS CASE

■ The theory of defense presented by Calene in this case was the lack of his knowledge of the status of the stolen vehicle. He claims ineffectiveness of counsel relating to counsel's failure to investigate and present witnesses which may have countered the state's evidence. *King,* 810 P.2d 119. This concept was particularized in reversal by this court in *Frias v. State,* 722 P.2d 135 (Wyo.1986). There is a fur-

ther contention of dilatory preparation and investigation which resulted in a required waiver of preliminary hearing. Calene then alleges a lack of contact with the witnesses for determination of trial usefulness. In general, this is the failure to investigate or interview witnesses, followed by failure to subpoena persons competent to give favorable testimony as an ineffectiveness of counsel contention. *King,* 810 P.2d at 122.

We do not assume or determine that valuable witnesses did exist or that a failure of investigation and preparation adversely denied valuable testimony to the defendant. We find the contentions sufficiently substantial in the record now presented that a hearing should be held. At the hearing, defense counsel can testify and Calene can provide additional evidence for any substantiation regarding the usefulness of non-called witnesses as evidence upon which the trial court's decision may be rendered regarding the standard of counsel performance.

■■■ The right of a defendant within this process to secure any hearing on an ineffectiveness charge is far different than the requirements for actual relief in reversing the conviction. Since this court has adopted the *Strickland* test for ineffectiveness review, in order for defendant to secure the relief of a new trial, he must first demonstrate that the conduct of the attorney fell below a deficiency standard of competent practice and, further, that any failure, such as it may have been, was actually prejudicial. Consequently, the test for a hearing to be held is the existence of a substantial issue. The requirement for affirmative relief is the heavy burden of prejudicial ineffectiveness of counsel. This court has addressed those criteria in following *Strickland* in a number of cases and opportunity to the defendant for a favorable conclusion has been noticeably confined.[5]

---

5. Ineffectiveness of counsel issues have not provided a major ingredient in the Wyoming Supreme Court appellate activities. Among opinions published since January 1, 1986, only thirty-six decisions rendered by written opinion of this court have included clearly stated ineffectiveness of counsel, trial court and appeal, appellate contentions. Most significant within that number have been procedural access rehearing of some kind and not substantive review of issues of ineffectiveness themselves. Within approximately 330 criminal opinion appeals, and those thirty-six which in some way alleged ineffectiveness, only three have been reversed by this court as substantively meritorious. This does not include two conflicts cases, *Kenney,* 837 P.2d 664 and *Shongutsie,* 827 P.2d 361, where the disassociative subject of conflict of interest was involved, or one other misdemeanor appeal which was remanded to the district court where the first appellate review was given to establish by whose decision a delayed appellate notice was caused. *Foote v. State,* 751 P.2d 884 (Wyo.1988).

Among those three cases reversed, the defendant was retried and acquitted in *Frias,* 722 P.2d 135; the defendant was retried and the conviction reversed in *Gist,* 737 P.2d 336; and the defendant pleaded out his criminal charge after reversal in *King,* 810 P.2d 119. Consequently, ineffectiveness was rejected as a basis for reversal on appeal in twenty-nine cases.

Among those cases, first appeal procedural default/waiver forfeiture of issues numbered the most rejected cases when included with the similar subject of right to counsel on post-conviction-relief appeal. *Engberg,* 820 P.2d 70; *Miller v. State,* 806 P.2d 1308 (Wyo.1991); *Stogner v. State,* 792 P.2d 1358 (Wyo.1990); *Martin v. State,* 780 P.2d 1354 (Wyo.1989); *Kallas,* 776 P.2d 198; *Murray,* 776 P.2d 206; *Amin,* 774 P.2d 597; *Campbell,* 772 P.2d 543; *Schuler,* 771 P.2d 1217; *Cutbirth,* 751 P.2d 1257.

Among the remaining nineteen cases, issues presenting contentions of ineffectiveness included: advice for plea bargain, *Duffy v. State,* 730 P.2d 754 (Wyo.1986); *Duffy v. State,* 789 P.2d 821 (Wyo.1990); *Duffy v. State,* 837 P.2d 1047 (Wyo.1992); *Flores v. State,* 822 P.2d 369 (Wyo. 1991); *Osborn v. State,* 806 P.2d 259 (Wyo. 1991); *Lower v. State,* 786 P.2d 346 (Wyo.1990); failure to interview and call witnesses, *Hamburg v. State,* 820 P.2d 523 (Wyo.1991); *Laing,* 746 P.2d 1247; *Campbell v. State,* 728 P.2d 628 (Wyo.1986); miscellaneous trial complaints and internal conduct of counsel, *Miller v. State,* 830 P.2d 419 (Wyo.1992); *Keene v. State,* 812 P.2d 147 (Wyo.1991); *Osborn,* 806 P.2d 259; *Lacey v. State,* 803 P.2d 1364 (Wyo.1990); *Murry v. State,* 713 P.2d 202 (Wyo.1986); external events controlling quality of conduct of defense counsel, *Capshaw v. State,* 714 P.2d 349 (Wyo.1986); conduct of prosecutor, *Schmidt v. State,* 738 P.2d 1105 (Wyo.1987); denied time to investigate and prepare, tactical decision or counsel mistake, *Seeley v. State,* 715 P.2d 232 (Wyo. 1986); *Robinson v. State,* 716 P.2d 364 (Wyo. 1986); and failure to pursue intoxication defense to a homicide charge, *Barron v. State,* 819 P.2d 412 (Wyo.1991).

It is quickly apparent that the only successful avenue has related to investigation and obtain-

In this appeal, Calene places heavy emphasis on potential testimony from Mr. Hartwig, Mr. Lyons, Mr. Allard, and Ms. Martinez. Relief by a grant of a new trial will likely be unavailable to Calene unless he can demonstrate availability and potential favorable character of resulting testimony from one or more of these witnesses which would not be cumulative or exculpatory in his case. The burden of persuasion is vested, of course, upon appellant in demonstration to the trial court that ineffectiveness is shown and is prejudicial in result.

## VI. CONCLUSION

This case is reversed and remanded to the trial court for a hearing to be held regarding ineffectiveness of counsel contentions presented in appellant's motion for remand. This court will otherwise retain jurisdiction.

CARDINE, J., concurs in the result only.

GOLDEN, J., files a concurring opinion.

GOLDEN, Justice, concurring.

I agree with the majority that this case be remanded for an evidentiary hearing concerning the ineffectiveness issues raised by the defendant's motion for new trial. In the words of a distinguished jurist, "however, I do not agree with the packaging of the majority opinion for publication." *Bowen v. Smith*, 838 P.2d 186, 197 (Wyo. 1992), Brown, Ret. J., concurring.

The issue before the court is simple. In defendant's motion for a new trial, he raised specific allegations that his defense trial counsel was ineffective in his pre-trial

ing witnesses, e.g. *Frias, Gist*, and *King*. The major issue with which this court has, however, been faced, was not the basic contended ineffectiveness of trial counsel, but examination of the method and process appropriately available to obtain a hearing when complaints were made and the concepts of procedural default as a constitutional right waiver and default were created. It is that specific topic with which we are provided in this appeal and for which specific and clearly defined rules and criteria are to be provided for assistance and direction of the judicial system and to accord with the constitutionally required directives provided by the

preparation and in his failure to obtain testimony of several potential witnesses whose testimony allegedly would have been favorable to the defendant's theory of defense, *viz.*, he had no knowledge that the vehicle was stolen. Since no record concerning the subject matter of these allegations existed, the trial court should have conducted an evidentiary hearing for the purpose of creating such a record and obtaining evidence upon which the trial court could make an informed decision about the validity of the ineffectiveness allegations. Had that simple procedure been employed, this appellate court would have had a complete record upon which to review the defendant's claims of error. Since we have no such complete record, we are compelled to remand so that a complete record can be made.

United States Supreme Court involving the constitutional right under the Sixth Amendment of effective assistance of counsel for those who are criminally charged. *Evitts*, 469 U.S. 387, 105 S.Ct. 830; *Strickland*, 466 U.S. 668, 104 S.Ct. 2052; *Anders*, 386 U.S. 738, 87 S.Ct. 1396. The urgency of decision is particularly manifested by recognition that procedural defaults have shoved this court into ineffectiveness evaluations which more simply could have been resolved by substantive examination of the original issue at a prior stage by a hearing, when necessary, or otherwise by a specific decision of the trial court after a fair hearing.